Timothy A. La Sota (Arizona SBN 020539)
**TIMOTHY A. LA SOTA, PLC**
2198 East Camelback Road, Suite 305
Phoenix, Arizona 85016
Telephone: (602) 515-2649
Email: tim@timlasota.com
*Attorney for Plaintiff Tempe Tavern 1810, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tempe Tavern 1810, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>City of Tempe, a municipal corporation, Kenneth McCoy, in his individual capacity, Eric Hernandez, in his individual capacity, Luis Samudio, in his individual capacity, Ben Henry, in his individual capacity, and Does 1-50, in their individual capacities,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Tempe Tavern 1810, LLC (the Plaintiff and its agents are referred to as "Tempe Tavern") submit this Complaint against Defendants City of Tempe, Kenneth McCoy, Eric Hernandez, Luis Samudio, and Ben Henry as follows.

1

# **PRELIMINARY STATEMENT**

1. Plaintiff Tempe Tavern brings this civil rights action under 42 U.S.C. §§ 1983 and 1985 to redress violations of its constitutional rights under the First and Fourteenth Amendments to the United States Constitution.

2. Tempe Tavern operates a bar and restaurant at the northeast corner of McClintock Road and Apache Boulevard in Tempe, a location that is in close proximity to the main campus of Arizona State University.

3. Defendants engaged in a pattern of selective enforcement, disproportionate regulatory action, reputational harm through official public statements, and retaliatory escalation of enforcement activity that have succeeded in largely destroying Tempe Tavern.

4. This selective enforcement has taken the form of two large-scale enforcement actions, that is, raids, on Tempe Tavern in 2025, which have been highly publicized, in part thanks to the efforts of the Defendants.

5. Despite these two raids, no significant violations were found on the part of Tempe Tavern. The only violation of any sort that the Defendants were able to allege as part of the November 20, 2025 raid was a violation by an employee, not Tempe Tavern, of the security plan on file with the City of Tempe, a requirement that Tempe has of all bars. The employee's sweatshirt obscured security identification on his underlying clothing.

6.     The violation has already been dismissed as part of a diversion agreement and did not result in any conviction or official finding of wrongdoing.

7.     The April 24, 2025 raid did result in a single alleged liquor violation, but the patron was 21 years old and had used a form of identification that the Arizona Department of Liquor Licensing and Control views as unacceptable, the basis for the violation.  The identification was valid, and the patron could have used it to drive, cash a check or even board an airplane.

8.     Though many other establishments share the same circumstance as Tempe Tavern, these establishments have not been subjected to any of these enforcement efforts.

9.     Tempe Tavern also alleges state law tortious conduct that it asks this Court to take supplemental jurisdiction over. The City Defendants publicly associated Plaintiff with a fatal accident while withholding investigative documentation necessary for Plaintiff to respond to that assertion.  Tempe Tavern had nothing to do with this fatal accident, and Tempe knew this when it made these tortious assertions.

10.     The City of Tempe Defendants took unprecedented steps to publicize the fact that a person driving a car that was involved in a fatal collision had been at Tempe Tavern on the night of the fatal collision.  And though this person was also at other locations, including an event in the Arizona State University parking lot

prior to a football game where alcohol was served, and house parties where alcohol was available, these were not mentioned by Tempe Police.

11.   Tempe Tavern operates a lawful operation and his highly scrupulous to ensure its adherence to all laws.  All patron identifications are checked, scanned and video recorded before the patron is admitted, with only those twenty-one years and older with a matching identification that appears genuine admitted.  This affords a complete defense under Arizona law to Tempe Tavern if it is later determined that a patron falsified an identification.  On some occasions Tempe Tavern asks for additional identification to confirm the state-issued identification. That is why Tempe Tavern has not received any citations for serving underage persons.

12.   Plaintiff seeks compensatory damages, punitive damages as permitted by law, and attorney's fees.

## JURISDICTION AND VENUE

13.   This is an action seeking to redress the violation of Plaintiff's right to due process and equal protection of the laws under the First and Fourteenth Amendments to the Constitution of the United States, as well as for defamatory conduct and placing Tempe Tavern in a false light, state torts.

14.   Plaintiffs assert this action against Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.

4

15.    This Court has subject matter jurisdiction over Plaintiffs' federal law claims under 28 U.S.C. §§ 1331 and 1343(4).

16.    This Court has supplemental jurisdiction Plaintiff's federal claims pursuant to 28 U.S.C. § 1367.

17.    Venue is proper in the United States District Court for the District of Arizona under 28 U.S.C. § 1391(B) because all or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and in this division.

## **PARTIES**

18.    Plaintiff Tempe Tavern 1880, LLC is an Arizona limited liability company operating a licensed establishment in Tempe, Arizona.

19.    Plaintiff holds a valid liquor license issued under Arizona law.

20.    Plaintiff is subject to regulation by the Arizona Department of Liquor Licenses and Control and inspection by municipal authorities.

21.    Defendant City of Tempe is a municipal corporation organized under the laws of Arizona and acts under color of state law.

22.    Defendant Kenneth McCoy is the Chief of Police of the City of Tempe.

23.    Defendant Eric Hernandez is a Lieutenant with the Tempe Police Department who personally attended both 2025 raids and took video and photo footage for later use on the City of Tempe Police Department's Instagram account.

24.    Defendant Luis Samudio is a Lieutenant with the Arizona Department of Liquor Licensing and Control, and the individual who was the highest ranking Arizona Department of Liquor Licensing and Control official present at the 2025 raids of Tempe Tavern.

25.    Defendant Ben Henry is the Director of the Arizona Department of Liquor Licensing and Control.

26.    Defendants DOES 1–50 are officers, agents, supervisors, and policymakers whose identities are presently unknown but who participated in the acts described herein.

## FACTS

### Plaintiff's Business Operations

27.    Plaintiff operates a lawful establishment open to the public.

28.    Plaintiff utilizes electronic identification scanning systems.  The identifications of all patrons are visually inspected before entry to the bar, and if the identification does not appear to be genuine, using scanning technology, and show the patron to be of legal age to enter the establishment and drink alcohol, the patron is not admitted.

29.    Tempe Tavern video records all such identification verifications.

30.    Plaintiff maintains written compliance protocols regarding alcohol service.

31.    Plaintiff trains employees regarding underage drinking prevention.

32.    Plaintiff relies on its liquor license and public goodwill to operate.

33.    The City of Tempe has admitted in the training classes it provides to liquor establishments that the actions of Tempe Tavern in "demand[ing], examin[ing], match[ing] and verify[ing]" identifications as Tempe Tavern does provides a legal defense to a charge of unlawfully furnishing alcohol to a minor under Arizona Revised Statutes § 4-241.

**The March 22, 2024 Action**

34.    On March 22, 2024, a Tempe Police Sergeant approached Tempe Tavern's Manager outside the establishment.

35.    The Sergeant indicated that police did not enter bars, although they used to do so.

36.    Approximately thirty minutes later, the Sergeant returned with approximately ten officers.

37.    Officers entered Plaintiff's premises.

38.    Patrons were asked to produce identification.

39.    Staff were diverted from normal operations.

40.    No warrant was presented, no arrests were made, no citations were issued to Tempe Tavern, and no violation notices to Tempe Tavern followed.

41.    The visible police presence created public concern regarding Plaintiff's operations, but standing alone this single event did not have a significant effect on Tempe Tavern's ongoing business operations in that gross revenues did not diminish.

**April 24, 2025 Multi-Agency Raid**

42.    On April 24, 2025, fifty-seven officers from multiple agencies conducted a coordinated enforcement operation at Plaintiff's establishment, this one involving both the City of Tempe Police Department and the Arizona Department of Liquor Licensing and Control.

43.    Officers entered during active business hours.

44.    Liquor compliance inspections were conducted.

45.    Fire inspections were conducted.

46.    Staff and patrons were questioned.

47.    Identification scanning logs were reviewed.

48.    No unlawful alcohol sales were documented.

49.    The Arizona Department of Liquor Licensing and Control cited Tempe Tavern for one liquor law ID violation, but the patron was in fact twenty-one years old.  The violation stemmed from accepting, in the Department of Liquor Licensing Control's judgment, an unacceptable form of identification, not from service of alcohol to a person underaged.  The patron was not cited because, being twenty-one, was lawfully on the premises.

8

50.    No fire code violations were sustained.

51.    An occupancy citation was later issued, but was subsequently dismissed in court.

52.    Significant media attention attended the operation, upon information and belief, at least in part thanks to efforts by Defendants to publicize it.

**April 30, 2025 Code Compliance Notice**

53.    On or about April 30, 2025, City of Tempe Code Compliance staff hand-delivered a notice to Plaintiff.  (Exhibit 1).  The notice involved non-liquor related code violations such as longstanding use of barbed wire on the premises, as well as murals.

54.    Plaintiff corrected all cited issues within days, thereby resolving all matters cited after Tempe inspected to verify that the changes had been made.

55.    For other violations cited that were later determined to be the responsibility of the landlord, the City of Tempe initially issued a compliance notice, but subsequently closed it without the correctional work being performed.

56.    Upon information and belief, similarly situated properties were not subjected to equivalent urgency or even enforcement at all.

**May 2025 Enforcement Grant**

57.    In or around May 2025, DLLC received a grant of approximately $120,000 to increase enforcement against underage drinking.

9

58. Following issuance of the grant, enforcement activity directed toward Plaintiff intensified.

59. Additional compliance checks occurred in the form a subsequent raid.

60. Upon information and belief, similarly situated establishments were not subjected to repeated large-scale operations during the same timeframe.

61. Plaintiff appears to have been uniquely targeted during this period, and a significant amount of this grant, maybe a majority or even all of it, was used specifically to target Tempe Tavern.

**November 20, 2025 Multi-Agency Raid**

62. On November 20, 2025, more than sixty agents participated in another coordinated enforcement action, this one also involving both the City of Tempe Police Department, the Arizona Department of Liquor Licensing and Control, and the United States Department of Homeland Security.

63. Drone surveillance preceded the operation.

64. Liquor and fire inspections were conducted.

65. Fire inspections were conducted.

66. No liquor violations were sustained.

67. No fire violations were sustained.

68. The only citation related to Tempe Tavern was one for a misdemeanor violation of Tempe Tavern's City of Tempe required security plan. The citation

was issued because the employee was wearing a sweatshirt that obscured his security identification his clothing.

69. This citation was subsequently dismissed as part of a diversion offer from Tempe whereby the cited employee performed eight hours of community service. No charge was ultimately officially sustained.

70. No citation was issued against Plaintiff itself, only a staff member.

71. Public perception of wrongdoing increased following the raid.

72. Significant media attention attended the operation, upon information and belief, at least in part thanks to efforts by Defendants to publicize it.

**The City of Tempe's Tortious Smear of Tempe Tavern**

73. On November 22, 2025, the City of Tempe Police Department, despite an ongoing investigation, publicized the November 20, 2025 raid on its official Instagram account, complete with musical sound effects. There was no mention at this time of any previous fatal collision. Defendant Lt. Hernandez captured the video at the November 20, 2025 raid to use for this post.

74. On December 3, 2025 the City of Tempe deleted the original November 22, 2025 Instagram post and created a new Instagram post. The most significant addition was Tempe Police now claiming that Tempe Tavern was responsible for a death that occurred the previous September. (Exhibit 2). Also on December 3, 2025, the City of Tempe tortiously smeared Tempe Tavern with a

"community service news" bulletin titled "Timeline Shows 19-Year-Old at Tempe Tavern Before Fatal Hit-and-Run."   (Exhibit 3).

75.     The September collision occurred on the morning of September 14, 2025, and took the life of motorcyclist.  A woman, 19 years of age at the time ("Driver"), was driving one of the vehicles involved.

76.     Tempe Tavern had nothing to do with this tragic collision, a fact the City of Tempe knew when it made these December 3, 2025 public communications.  The Driver had been at Tempe Tavern previously that night, but she presented what appeared to be a genuine identification that listed her age as 22 at the time.  This identification was properly verified by Tempe Tavern staff, and the Driver walked home from Tempe Tavern, subsequently getting into her vehicle and ultimately the fatal collision.

77.     Tempe also indicated that this fatal collision was the reason, or a reason for the November 20, 2025 raid, but this is false.  Tempe Police Department did not know that the Driver had been at Tempe Tavern on the night of September 13 and morning of September 14, 2025 at the time they organized and/or conducted that raid.

78.     These "news" reports were defamatory and placed Tempe Tavern in a false light, as if it had anything to do with this tragic death.

79.     The statements were issued while an investigation was ongoing.

80.     Plaintiff had not been provided formal findings at that time.

81.     These tortious defamatory and false light actions have been successful in smearing Tempe Tavern.  Emblematic of the press coverage is an Arizona's Family (Channel 3) story titled "Tempe Tavern linked to suspect in deadly hit-and-run crash, police say." https://www.msn.com/en-us/news/crime/tempe-tavern-linked-to-deadly-hit-and-run-crash-suspect-police-say/ar-AA1RFb2z   This article starts out with the statement that "Police announced Wednesday that a 19-year-old suspect in a deadly September hit-and-run was partying at a popular Tempe college bar minutes before the collision."

**Police Report Requests and Delays**

82.     Beginning December 17, 2025, Plaintiff requested the official police report detailing the timeline of the Driver's whereabouts on the night of the collision.

83.     Plaintiff was informed it would be available shortly.

84.     The timeline was not released until February 2, 2026 after suit had been filed under the Arizona Public Records Law, A.R.S. § 39-121 *et. seq.*, *Deaver v. City of Tempe*, Maricopa County Superior Court case number CV2026-006381.

85.     During this period, the public narrative that Tempe Tavern had something to do with the fatal collision persisted.

86.     Plaintiff lacked reports it was entitled to that would have afforded Tempe Tavern additional basis to respond to the attacks.

13

**Harm to Tempe Tavern and Ongoing Nature of Actions**

87.    Tempe Tavern has suffered significant damages as a result of the tortious actions of the Defendants.

88.    The City of Tempe has adopted what amounts to a policy or custom of actions against Tempe Tavern designed to destroy Tempe Tavern.

89.    Tempe Tavern's business has diminished significantly, and its gross sales are approximately 10% of what they were prior to the 2025 raids.

## <u>COUNT ONE</u>
**Violation of Plaintiff's right to equal protection of the laws under the First and  Fourteenth Amendments to the Constitution of the United States**
**(All Plaintiffs and all Defendants)**

90.    Plaintiff realleges the preceding paragraphs of the Complaint as if fully stated herein.

91.    The First and Fourteenth Amendments to the United States Constitution protect the rights of all citizens to due process and equal protection of the laws.

92.    42 U.S.C. § 1983 provides for a civil cause of action for damages for each citizen for any "deprivation of any rights, privileges, or immunities secured by the Constitution."

93.    A Plaintiff may prevail on an equal protection claim by showing disparate treatment that has no rational basis. *Benson v. Arizona State Bd. of Dental Examiners*, 673 F.2d 272, 277 (9th Cir. 1982)

14

94.     Plaintiff was intentionally treated differently than other applicants for a dual license in the same circumstance.

95.     Defendants intentionally subjected Plaintiff to selective enforcement.

96.     Plaintiff was treated differently from similarly situated establishments.

97.     No rational basis justified Defendants actions of targeting Tempe Tavern while ignoring everyone else that was in a similar situation.

98.     Defendants violated Plaintiff's right to equal protection.

99.     No reasonable official could believe it lawful to engage in the disparate treatment described above and the Defendants are not entitled to qualified immunity.

100.    For the individual Defendants, To the extent that these violations were also carried out by their subordinates, Defendants are also liable for such violations because Defendants either directed their subordinates' conduct, or had knowledge of and acquiesced in the unconstitutional conduct carried out by their subordinates.

## COUNT TWO

**Violation of Plaintiff's Right to Due Process Prior to Deprivation of Property (All Defendants)**

101.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully stated here.

102.   The Fourth and Fourteenth Amendments to the United States Constitution protect an individual's right to property, and prohibit the government from taking adverse steps that result in deprivation of property without due process.

103.   To have a property interest protectable by the Fourth and Fourteenth Amendment to United Constitutionals, a person "must…have a legitimate claim of entitlement to it." *The Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

104.   That a state licensure scheme confers protectable property rights is confirmed by the statutory scheme authorizing the issuance of licenses in the first instance. *Barry v. Barchi*, 443 U.S. 55, 70 (1979).

105.   Plaintiff possessed a protectable property interest in its liquor license and the goodwill it has been able to generate from use of this license.

106.   Defendants' conduct deprived Plaintiff of a property interest while affording Plaintiff no satisfactory pre-deprivation due process, a violation of the United States Constitution.

107.   Plaintiff was deprived of protected interests without adequate process.

108.   There is no qualified immunity as the violations here are of clearly established rights that any reasonable official should be aware of.

109.   For the individual Defendants, To the extent that these violations were also carried out by their subordinates, Defendants are also liable for such violations

16

because Defendants either directed their subordinates' conduct, or had knowledge of and acquiesced in the unconstitutional conduct carried out by their subordinates.

## COUNT THREE

### Civil Conspiracy Under 42 U.S.C. § 1985

### (All Defendants)

110.   Plaintiff incorporates the preceding paragraphs of this Complaint as if fully stated here.

111.   Defendants acted in concert to deprive Plaintiff of equal protection and due process rights guaranteed by the Arizona Constitution.

112.   Overt acts included coordinated raids, public communications, and investigative delay.

113.   The conspiracy resulted in economic injury.

114.   There is no qualified immunity as the violations here are of clearly established rights that any reasonable official should be aware of.

115.   For the individual Defendants, To the extent that these violations were also carried out by their subordinates, Defendants are also liable for such violations because Defendants either directed their subordinates' conduct, or had knowledge of and acquiesced in the unconstitutional conduct carried out by their subordinates.

17

## COUNT FOUR

### False Light Invasion of Privacy and Right to Privacy
### (City of Tempe, Kenneth McCoy, and Eric Hernandez)

116.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully stated here.

117.    Under Arizona law, "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 338 (1989).

118.    All elements required to prove the tort of false light are present.

120.    Even if it is not an actual claim (it is) of involvement by Tempe Tavern, Tempe Tavern has been placed in a false light, and any reasonable person would be highly offended about being wrongly blamed for a young person's tragic death.

120.    Tempe knows the facts, and knew the facts at all relevant times, surrounding the Driver's activities on the night of September 13 and morning of September 14, 2025.

18

121.  The City of Tempe knows the fatal collision did not involve Tempe Tavern, and yet nonetheless published this information.  In the alternative, the City of Tempe acted in reckless disregard as to the falsity of the publicized matter and the false light in which Tempe Tavern would be placed.

122.  The Driver was at a number of other places that evening and night that had alcohol, including an event associated with a home football game of Arizona State University prior to the game in the ASU parking lot, and house parties with alcohol.

123.  None of these other persons and entities have been subject to this tortious smear campaign.

124.  Tempe Tavern has been significantly damaged by Tempe's actions in the form of lost revenue.

## COUNT FIVE

**Defamation**
**(City of Tempe, Kenneth McCoy and Eric Hernandez)**

125.  Plaintiff incorporates the preceding paragraphs of this Complaint as if fully stated here.

126.  Under Arizona law, a defamatory publication regarding a private figure on matters of private concern "must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach [that person]'s

19

honesty, integrity, virtue, or reputation." *Turner*, 174 Ariz. at 203–04, 848 P.2d at 288–289 (quoting *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989)).

127. In addition, the Defendant must act at least negligently as to the truth or falsity of the matter asserted. *Scottsdale Pub., Inc. v. Superior Court In and For Cnty. of Maricopa*, 159 Ariz. 72, 75 (App. 1988).

128. Tempe Tavern had nothing to do with the motorcyclists' tragic death, Tempe knew of this, or acted at least negligently in asserting to the contrary.

129. Tempe's conduct meets the elements necessary to sustain a claim for defamation.

130. Tempe Tavern has been significantly damaged by Tempe's actions in the form of lost revenue.

## **PRAYER FOR RELIEF**

WHEREFORE, having fully pled the causes of action, Plaintiffs respectfully requests this Court to:

A.    Award Plaintiffs nominal damages against each Defendant, jointly and severally, in the amount of $1.00;

B.    Award Plaintiffs compensatory damages against each Defendant, jointly and severally, in an amount to be determined at trial;

20

C.    Award Plaintiffs punitive damages against each Defendant, jointly and severally, in an amount to be determined at trial;

D.    Award Plaintiffs' their reasonable attorney fees and costs pursuant to 42 U.S.C. §1988, and any other applicable law; and

E.    Award Plaintiffs all other relief that is just and appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues in this litigation that are triable to a jury.

**RESPECTFULLY SUBMITTED** this 23rd day of February, 2026.

**TIMOTHY A. LA SOTA, PLC**

By:    /s/ Timothy A. La Sota
TIMOTHY A. LA SOTA
2198 E. CAMELBACK RD., # 305
PHOENIX, ARIZONA 85016
*Attorney for Plaintiff Tempe Tavern 1810, LLC*